IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:15-CV-135-F

| | |
|---|---|
| JACQUELINE BARFIELD, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-23, -25] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Claimant Jacqueline Barfield ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be allowed, Defendant's Motion for Judgment on the Pleadings be denied, and the case be remanded for further proceedings.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on March 28, 2011, alleging disability beginning March 21, 2009.[1] (R. 14, 309-10). The claim was denied initially

---

[1] Claimant filed a prior claim, not at issue here, on June 8, 2006, which was ultimately denied on March 20, 2009. (R. 127-38).

and upon reconsideration. (R. 139-65). A hearing before the Administrative Law Judge ("ALJ") was held on September 26, 2012 (R. 74-110), and on December 12, 2012, the ALJ issued a decision denying Claimant's request for benefits (R. 166-82). On April 15, 2014, the Appeals Council remanded the claim for further administrative proceedings. (R. 183-87). A second administrative hearing before the ALJ was held on September 4, 2014, at which Claimant, represented by counsel, a third-party witness, and a vocational expert ("VE") appeared and testified. (R. 31-73). On April 10, 2015, the ALJ issued a decision again denying Claimant's request for benefits. (R. 11-30). On July 18, 2015, the Appeals Council denied Claimant's request for review. (R. 1-6). Claimant then commenced the instant action, seeking judicial review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270

2

F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special

3

technique." *Id.* § 404.1520a(e)(3).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful activity for the period from her alleged onset date through her date last insured ("DLI") of June 30, 2011. (R. 16). Next, the ALJ determined Claimant had the severe impairments of degenerative disc disease, carpel tunnel syndrome, and patellar tendinitis, and the nonsevere impairments of obesity, anxiety, and depression. (R. 16-18). Additionally, the ALJ determined that Claimant failed to establish fibromyalgia as a medically determinable impairment. (R. 18). At step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18-19). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild difficulties in social functioning, activities of daily living, and concentration, persistence, or pace, with no episodes of decompensation of an extended duration. (R. 18).

Prior to proceeding to step four, the ALJ assessed Claimant's residual functional capacity ("RFC") finding Claimant has the ability to perform sedentary work[2] with the following limitations: lifting or carrying 10 pounds frequently and occasionally; sitting, standing, or walking 30 minutes

---

[2] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. "Sitting" generally totals about 6 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1. *Id.*

4

at a time with adjusting those positions to create an eight-hour workday without leaving the workstation; occasional balancing, stooping, kneeling, crouching,[3] or climbing of ramps and stairs; occasional handling or fingering with the dominant upper extremity; no crawling or climbing ladders or scaffolds; no work with exposure to hazards; and understanding, remembering, and carrying out simple instructions. (R. 19-23). In making this assessment, the ALJ found Claimant's statements about her limitations not entirely credible. (R. 22). At step four, the ALJ concluded Claimant was unable to perform her past relevant work. (R. 23). Nevertheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 23-24).

Claimant contends that the ALJ erred by (1) failing to find Claimant's fibromyalgia was a severe impairment during the relevant period, and (2) finding an RFC inconsistent with the opinions of Dr. Pippen, Claimant's primary care provider. Pl.'s Mem. [DE-23-1] at 11-15.

## V. DISCUSSION

### A. The ALJ's Consideration of Claimant's Fibromyalgia

At step two of the sequential evaluation process, the ALJ must consider the severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). "To be found disabled, an individual must have a medically determinable 'severe' physical or mental impairment or combination of impairments that meets the duration requirement." S.S.R. 96-3p, 1996 WL 374181, at *1 (July 2,

---

[3] In stating Claimant's RFC, the ALJ indicated first that Claimant was limited to occasional crouching, but then indicated Claimant could not crouch. (R. 19, 21). The limitation to occasional crouching is consistent with the ALJ's second hypothetical to the VE (R. 67), which mirrors the RFC in all other respects, and Claimant has asserted no error or prejudice in this regard.

5

1996). The duration requirement provides that unless a claimant's "impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. An impairment is considered to be severe "if it significantly limits an individual's physical or mental abilities to do basic work activities; an impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." S.S.R. 96-3p, 1996 WL 374181, at *1; *see also* 20 C.F.R. § 404.1521 (defining non-severe impairments and providing examples of basic work activities). The burden of proof and production during the second step rests on the claimant. *Pass*, 65 F.3d at 1203. "As long as a claimant has any severe impairment or combination of impairments, the ALJ must proceed beyond step two and consider all of the impairments (including non-severe impairments) at the remaining steps of the sequential evaluation process[.]" *Pittman v. Astrue*, No. 5:08-CV-83-FL, 2008 WL 4594574, at *4 (E.D.N.C. Oct. 10, 2008) (unpublished). Further, any error at step two in failing to properly consider whether an impairment is severe may be harmless where the ALJ considers that impairment in subsequent steps. *See Jones v. Astrue*, No. 5:07-CV-452-FL, 2009 WL 455414, at *2 (E.D.N.C. Feb. 23, 2009) (unpublished) (finding no reversible error where an ALJ does not consider whether an impairment is severe at step two of the sequential evaluation provided the ALJ considers that impairment in subsequent steps).

At step two the ALJ found that during the period in question, from Claimant's onset date of March 21, 2009 through Claimant's DLI of June 30, 2011 (R. 24), Claimant was not "positively diagnosed with fibromyalgia, or . . . had widespread pain in all quadrants of her body, at least 11 tender points on physical exam, or repeated manifestations of six or more fibromyalgia signs, symptoms, or co-occurring conditions." (R. 18). Therefore, the ALJ concluded Claimant's

6

fibromyalgia was not a medically determinable impairment under Social Security Ruling 12-2p governing the evaluation of fibromyalgia. *Id.*

Claimant contends the ALJ's finding that her fibromyalgia was not positively diagnosed during the relevant period was error, citing treatment notes and Claimant's testimony regarding pain due to fibromyalgia.[4] Pl.'s Mem. [DE-23-1] at 12-13. Defendant contends the ALJ's determination was proper based on a normal rheumatology screening, generally normal examinations, improvement of her back pain with a steroid taper, and the lack of a fibromyalgia diagnosis prior to DLI. Def.'s Mem. [DE-26] at 11-14. Defendant further contends the ALJ considered the combined effects of all of Claimant's impairments throughout the decision, rendering harmless any error at step two. *Id.* at 14-16. The ALJ's finding that Claimant's fibromyalgia is not a medically determinable impairment is not supported by substantial evidence and the error is not harmless.

A medically determinable impairment is one that "result[s] from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques" and "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. § 404.1508. The Social Security Administration defines fibromyalgia as "a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." S.S.R. 12-2p, 2012 WL 3104869, at *2 (July 25, 2012). "Generally, a person can establish that he or she has [a medically determinable impairment] of

---

[4] Claimant also notes the ALJ's finding that although Claimant had a "history of fibromyalgia," it was non-severe because "she demonstrates full muscle strength and her flares were characterized as intermittent[.]" Pl.'s Mem. [DE-23-1] at 12. However, these were the ALJ's findings in the first decision from December 12, 2012 (R. 171-72), which the Appeals Council vacated (R. 184). As stated above, on remand the ALJ found Claimant's fibromyalgia was not a medically determinable impairment during the period in question. (R. 18).

7

[fibromyalgia] by providing evidence from an acceptable medical source." *Id.* However, a diagnosis alone is not sufficient, rather "[t]he evidence must document that the physician reviewed the person's medical history and conducted a physical exam." *Id.* In evaluating fibromyalgia, the ALJ considers the physician's treatment notes, the claimant's symptoms over time, and the physician's assessment over time of the claimant's physical strength and functional abilities. *Id.* A claimant's fibromyalgia is considered a medically determinable impairment when the following criterial are met: (1) the physician diagnosed fibromyalgia and provides evidence of (a) a history of widespread pain, (b) at least 11 positive tender points on physical examination, and (c) that other disorders that could cause the symptoms or signs were excluded; or (a) a history of widespread pain, (b) repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and (c) that other disorders that could cause the aforementioned symptoms were excluded; and (2) the physician's diagnosis is not inconsistent with the other evidence in the claimant's case record. *Id.* at *2-3.

There is ample evidence in the record demonstrating that Claimant's fibromyalgia was a medically determinable impairment during the relevant period. On October 21, 2010, Claimant presented to Dr. Pippin with burning and paresthesia in both legs and pain but no weakness. (R. 453). On examination Claimant exhibited mild tenderness to palpitation over DIP and PIP joints and diffusely in the lumbosacral area. (R. 456). Dr. Pippin ordered screening labs, an MRI of her neck and lumbar spine, prescribed a prednisone taper and Vicodin for pain, and suggested a rheumatology consultation may be necessary depending on the test results. *Id.* On November 3, 2010, Claimant saw Dr. Pippin to follow-up on the test results and her myalgias and paresthetic sensations. (R. 435).

8

Dr. Pippin noted positive MRI findings of congenital spinal stenosis in the columbar spine and significant degenerative disc disease in the lumbar spine, and that her symptoms had improved some on steroid taper but were not completely resolved. (R. 435). Dr. Pippin indicated Claimant's "Rheumatologic screening," which appears to refer to a Rheumatoid Factor lab test (R. 451), was normal, but she was still having some lower back pain radiating down her legs, he did not believe the degenerative disc disease was causing it, and he would obtain an opinion from rheumatology (R. 438).

A May 2, 2011 treatment note from Dr. Ramsay, Claimant's treating rheumatologist at the time, indicates that he saw Claimant in February (the February treatment note does not appear in the record) and she had "burning all over, stiffness, fatigue, and poor sleep," which he thought was "chronically fibromyalgia." (R. 567). Dr. Ramsay noted at the May visit that Claimant was "achy all over and stiff all day," experienced burning, had poor sleep, and on examination she "continue[d] to have diffuse trigger points across her back, anterior chest wall, shoulders, arms, mid back, low back, above her knees, and muscle spasms across her trapezius," concluding Claimant had "what appears to be chronic pain fibromyalgia-like symptoms." *Id.* Dr. Ramsay started her on a trial of Sevella, which is used to treat fibromyalgia pain. *See Whisten v. Colvin*, No. 5:13-CV-00104, 2014 WL 7339185, at *5 (W.D. Va. Dec. 23, 2014) (unpublished) ("Savella, or milnacipran, is 'used for treating pain associated with fibromyalgia.'") (citing MedicineNet, *Milnacipran, Savella*, http://www.medicinenet.com/milnacipran/article.htm). On July 26, 2011, Dr. Ramsay again saw Claimant in follow-up, stating "[a]s you know [Claimant] has fibromyalgia, osteoarthritis and degenerative dis[c] disease in her cervical spine." (R. 562). Dr. Ramsay noted Claimant had burning pain all over and continued to be stiff all day, achy, and have poor sleep. *Id.* On examination, Claimant

9

continued to have diffuse trigger points across her back, chest wall, shoulders, arms, mid back, lower back and knees, and mild muscle spasms at her trapezius, though her spine was nontender to palpation and her strength was intact. *Id.* Dr. Ramsay stated a diagnosis of "fibromyalgia with chronic pain-like syndrome, ongoing and flaring intermittently." *Id.* Subsequent records refer to Claimant's "longstanding significant fibromyalgia" with "[s]ignificant pain on a day-to-day basis" (R. 659), and "longstanding" and "severe" fibromyalgia with "severe pain most days" and "rather bad trigger point pain" (R. 674). Finally, Dr. Pippin provided two substantially similar opinions, one in July 2011 and another in January 2013, regarding the severity of Claimant's symptoms and limitations from chronic pain and fibromyalgia. (R. 679-70).

The above-summarized medical records indicate that Claimant experienced symptoms consistent with fibromyalgia, in conformity with the requirements of Ruling 12-2p, prior to her DLI. Although a definitive diagnosis of fibromyalgia does not appear in the record until July 26, 2011, less than one month post-DLI, medical records pre-dating Claimant's DLI reflect symptoms consistent with fibromyalgia. (R. 435, 438, 451, 453, 456). In November 2010, Dr. Pippin did not believe degenerative disc disease was causing Claimant's pain and sought a further opinion from rheumatology (R. 438), who ultimately diagnosed Claimant with fibromyalgia (R. 562, 567). There is reference made in Dr. Ramsay's May 2, 2011 treatment note that he saw Claimant in February 2011, which was during the relevant period, and she had "burning all over, stiffness, fatigue, and poor sleep," which he thought was "chronically fibromyalgia." (R. 567). Dr. Ramsay also noted that Claimant "*continue[d] to have* diffuse trigger points across her back, anterior chest wall, shoulders, arms, mid back, low back, above her knees, and muscle spasms across her trapezius." (R. 567) (emphasis added). Post-DLI records describe Claimant's fibromyalgia as "longstanding." (R. 659,

674). Dr. Pippin's opinions of July 20, 2011 and January 23, 2013, which were the subject of the Appeals Council's remand (R. 184), are probative of Claimant's fibromyalgia but were not discussed by the ALJ in determining that Claimant's fibromyalgia was not a medically determinable impairment. (R. 18). The ALJ also omits from the discussion relevant examination findings, such as Dr. Ramsay's July 26, 2011 examination findings of diffuse trigger points across Claimant's back, chest wall, shoulders, arms, mid back, lower back and knees, and mild muscle spasms at her trapezius. (R. 18, 20, 562). The Fourth Circuit has held that post-DLI medical records "may be relevant to prove a disability arising before the claimant's DLI." *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012) (citing *Wooldridge v. Bowen*, 816 F.2d 157, 160 (4th Cir. 1987)). Thus, based on the pre- and post-DLI evidence, the ALJ's finding that Claimant's fibromyalgia is not a medically determinable impairment is not supported by substantial evidence.[5] *See Robinson v. Astrue*, No. 5:08-CV-372-BO, 2009 WL 1490684, at *1 (E.D.N.C. May 26, 2009) (unpublished) (remanding case to allow for more specific findings with regard to the claimant's fibromyalgia where ALJ found that fibromyalgia was not a medically determinable impairment but the claimant was diagnosed with fibromyalgia on multiple occasions).

Defendant's arguments in support of the ALJ's decision are not persuasive. First, Defendant asserts that the ALJ's failure to find Claimant's fibromyalgia was severe does not translate to a failure to evaluate it. Def.'s Mem. [DE-26] at 11. Generally it is true that any error at step two in failing to properly consider whether an impairment is severe may be harmless where the ALJ considers that impairment in subsequent steps. *Jones*, 2009 WL 455414, at *2. However, here, the

---

[5] It is also noteworthy that the ALJ concluded in her December 12, 2012 decision, subsequently vacated by the Appeals Council, that Claimant's fibromyalgia constituted a non-severe impairment. (R. 171-72).

11

ALJ failed to consider Claimant's fibromyalgia at the subsequent steps because she found it was not a medically determinable impairment. (R. 18-23). Defendant also cites evidence of a normal rheumatological screening and improvement of low back pain with a steroid taper as substantial evidence for the ALJ's finding. Def.'s Mem. [DE-26] at 13. As explained above, Dr. Pippin noted some, but not complete, improvement on steroid taper (R. 435), and subsequent records, including Dr. Pippin's July 20, 2011 opinion, indicate that Claimant continued to experience chronic pain and "has failed physical therapy, TENS units and other modalities of pain treatment." (R. 252, 562, 567, 659, 674). The normal "Rheumatologic screening," appears to refer to a Rheumatoid Factor lab test (R. 451), and, despite this normal test, Dr. Pippin determined an opinion from rheumatology was necessary (R. 438) and Claimant was ultimately diagnosed with fibromyalgia (R. 562).

Additionally, many of the normal examination findings Defendant cites in support of the ALJ's decision, such as full motor strength, lack of neurological deficits, and normal range of motion, Def.'s Mem. [DE-26] at 13-14, are not related to fibromyalgia, and this court has previously recognized that "objective tests are of little relevance in determining [fibromyalgia's] existence or severity." *See Batson v. Colvin*, No. 7:14-CV-48-D, 2015 WL 1000791, at *11 (E.D.N.C. Mar. 5, 2015) (unpublished) (quoting *McGlothlen v. Astrue*, No. 7:11-CV-148-RJ, 2012 WL 3647411, at *9 (E.D.N.C. Aug. 23, 2012) (unpublished) (citing *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996) (stating "of greatest importance to disability law, [fibromyalgia's] symptoms are entirely subjective"); *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988) (explaining fibromyalgia patients generally "manifest normal muscle strength and neurological reactions and have a full range of motion"))). Finally, the ALJ's consideration of Claimant's other impairments in the RFC analysis does not render harmless the failure to consider the effects of her

12

fibromyalgia in determining Claimant's RFC. For example, in discussing the June 4, 2012 treatment note of Dr. Alloway, Claimant's treating rheumatologist, the ALJ states that there was no evidence of radicular disease and that Claimant complained of some bilateral heel discomfort but it was not severe and she walked without a limp. (R. 21). However, the ALJ omitted reference to Dr. Alloway's discussion of Claimant's "longstanding significant fibromyalgia" that "significantly affects day-to-day functioning." (R. 659). Similarly, the ALJ noted that the following month Claimant had some point tenderness but a negative straight-leg raise test (R. 21), yet failed to mention her "diffuse trigger point tenderness [in the] upper and lower extremities in a symmetric manner" and Dr. Alloway's conclusion that her fibromyalgia "appears to be causing her acute flare at this time" (R. 666). Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). Thus, the ALJ's error at step two was not harmless in light of the ALJ's failure to consider Claimant's fibromyalgia at the subsequent steps, and it is recommended this matter be remanded for further consideration of Claimant's fibromyalgia at steps two and three, as well as in the RFC determination.

### B. The ALJ's Evaluation of the Medical Opinion Evidence

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* § 404.1527(c)(1). Additionally, more

13

weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources such as consultative examiners. *Id.* § 404.1527(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590 (quotations & citations omitted). In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.*; *see Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence").

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (unpublished), the weight afforded such opinions must nevertheless be explained. S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996). An ALJ may not reject medical evidence for the wrong reason or no reason. *Wireman*, 2006 WL 2565245, at *8. "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No.

14

7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (unpublished) (citations omitted).

Claimant's treating physician Dr. Pippin provided two opinions regarding Claimant's impairments and limitations. (R. 679-80). In his July 20, 2011 opinion, Dr. Pippin stated as follows:

> [Claimant] suffers from chronic pain with burning paresthetic discomfort in her extremities. She has persistent low back pain. She is chronically maintained on narcotics as well as sedating muscle relaxers with only partial relief of her pain. She has failed physical therapy, TENS units and other modalities of pain treatment[.] She is followed by Rheumatology, but still has difficulty with persistent pain, which limits her ability to perform any gainful activity. She requires the chronic narcotics and sedating medications to keep her discomfort to a level[] under borderline control. She has poor sleep pattern because of chronic pain and she is chronically fatigued[.] Any type of stooping, bending, lifting or prolonged standing will significantly exacerbate her chronic underlying pain. In my opinion, she is unable to perform any gainful occupation.

(R. 679). The ALJ afforded this opinion little weight, finding the opinion that "*any* type of stooping, bending, lifting, or prolonged standing would significant[ly] exacerbate the claimant's pain is not supported by her minimal objective findings on exams." (R. 22). The ALJ's failure to consider Claimant's fibromyalgia in evaluating Claimant's RFC and in considering the medical opinion evidence undermines the weight afforded Dr. Pippin's opinion where, as explained above, normal examination findings and fibromyalgia are not necessarily mutually exclusive. *See Batson*, 2015 WL 1000791, at *11; *Preston*, 854 F.2d at 820. Thus, the ALJ's assessment of Dr. Pippin's July 20, 2011 opinion is not supported by substantial evidence.

Likewise, the ALJ's assessment of Dr. Pippin's January 23, 2013 opinion is deficient. Dr. Pippin opined as follows:

> I am writing to respond to your letter concerning the denial of Ms. Jacqueline Barfield's disability. I have reviewed the pertinent records that were forwarded to me with the findings in her disability hearing. I would disagree that Ms. Barfield is

15

> able to stoop, bend, push, and pull 20 pounds occasionally or 10 pounds frequently. I would disagree that she is able to stoop, kneel, crouch, and crawl frequently. She requires chronic pain medications for her conditions including Vicodin intermittently, Lyrica, trazodone, tramadol, Flexeril, and Mobic on a regular basis[.] She has abnormal findings on MRI scans that are not surgical lesions but certainly can cause significant pain. She is followed regularly by Rheumatology for her persistent chronic pain issues. I do not believe that she is able to perform the activities as outlined in her disability hearing.

(R. 680). The ALJ afforded little weight to this opinion, finding "[i]t reflects the claimant's level of functioning at the time of her report, which was nearly four years after [ALJ Miller's 2009] decision was rendered." (R. 22). First, Dr. Pippin's opinion appears to address the ALJ's December 2012 decision (R. 173) rather than ALJ Miller's 2009 decision (R. 135). *See* (R. 256) (Claimant's brief to the Appeals Council requesting reversal and remand of the ALJ's December 2012 decision and citing Dr. Pippin's January 2013 opinion obtained by counsel in response to the ALJ's unfavorable decision). Thus, to the extent the opinion relates to Claimant's condition at the time it was written, it was approximately one month after the ALJ's 2012 decision, not four years after the 2009 decision. In any event, both prior decisions contemplate a limitation to a reduced range of light work with frequent stooping, kneeling, crouching, and crawling. (R. 135, 173); 20 C.F.R. § 404.1567(b). More importantly, however, is the consistency between Dr. Pippin's January 23, 2013 opinion and his July 20, 2011 opinion, which undermines the ALJ's determination that the 2013 opinion reflected only Claimant's functioning at the time it was written. As explained above, post-DLI evidence "may be relevant to prove a disability arising before the claimant's DLI." *Bird*, 699 F.3d at 340. Additionally, in reversing and remanding the ALJ's decision, the Appeals Council found Dr. Pippin's January 23, 2013 opinion to be "[n]ew and material evidence," which "emphasizes the severity of the claimant's fibromyalgia impairment and provides an opinion with

respect to the claimant's resulting functional limitations." (R. 184). Accordingly, the ALJ's assessment of Dr. Pippin's 2013 opinion is not supported by substantial evidence. It is recommended the matter be remanded for further consideration of Dr. Pippin's 2011 and 2013 opinions.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-23] be ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-25] be DENIED, and the case be remanded for further proceedings.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **September 2, 2016** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **14 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and**

Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

SUBMITTED, this the 19th day of August, 2016.

*[signature]*
Robert B. Jones, Jr.
United States Magistrate Judge